**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE**

TERRY D. SNEED,                                )
                                               )
                 *Petitioner*,                 )
                                               )
v.                                             )          No. 2:11-cv-295-JRG-DHI
                                               )
DAVID SEXTON, Warden,                          )
                                               )
                 *Respondent*.                 )

## <u>MEMORANDUM OPINION</u>

This is *a pro se* prisoner's application for a writ of habeas corpus pursuant to 28 U.S.C. §

2254, filed by Terry D. Sneed ("Sneed" or "Petitioner"), who is currently serving a sentence of

124 years with the Tennessee Department of Correction (Doc. 1). Sneed was indicted in Unicoi

County on two counts of aiding and abetting aggravated rape and one count of aggravated rape

and in Carter County for one count of aggravated robbery and one count of kidnapping and was

convicted of all counts[1] (Doc. 1, Pet.). Warden David Sexton has filed a response, arguing that

relief is not warranted on any of Sneed's claims and, in support of his arguments, has submitted

copies of the state court record (Docs. 12 and 13). For reasons which appear below, this petition

will be **DENIED**.

## I.   PROCEDURAL HISTORY

On November 5, 1998, Petitioner's convictions were affirmed on direct appeal by the

Tennessee Court of Criminal Appeals (hereinafter "TCCA"). *State v. Sneed*, No. 03C01-9702-

CR-00076, 1998 WL 783330 (Tenn. Crim. App. Nov. 5, 1998). On April 5, 1999, the Tennessee

---

[1] The cases were consolidated for trial in Unicoi County. *Sneed v. State*, No. E2010-00323-CCA-R3-PC, 2011 WL
862029, at *2 n.1 (Tenn. Crim. App. Mar. 14, 2011), *perm. to app. denied*, (Tenn. 2011).

Supreme Court (hereinafter "TSC") denied his application for permission to appeal. *Id*. Petitioner did not file a petition for a writ of certiorari in the United States Supreme Court.

Petitioner's next challenge to his conviction was brought under the Tennessee Post-Conviction Procedure Act, by means of his filing, on March 15, 2000, a petition for post-conviction relief. *Sneed v. State*, No. E2010-00323-CCA-R3-PC, 2011 WL 862029, at *1 (Tenn. Crim. App. Mar. 14, 2011). After a substantial delay, much of which was attributed to Sneed, and an evidentiary hearing on the claims, the state post-conviction court denied the petition and the TCCA affirmed the denial. *Id*., 2011 WL 862029, at *1, *5. Petitioner's request for permission to appeal was likewise denied by the TSC.

There followed this instant § 2254 habeas corpus application.

## II.    FACTUAL BACKGROUND

The factual recitation is taken from the TCCA's opinion on direct appeal of Petitioner's post-conviction case.

> The victim in this case was an employee at the Stop-In Market in Carter County, where she generally worked the night shift from eleven o'clock p.m. until seven o'clock a.m. On November 29, 1992 at approximately one-thirty a.m., shortly after the victim's co-worker left for the night, leaving the victim alone in the store, two males entered the market. The two men, who were captured on video surveillance tape, were armed with knives. They approached the victim and demanded that she get a bag and fill it with all the money in the cash register. The victim testified that both men threatened to kill her if she did not cooperate, and the victim acceded to their demands. The men then dragged her from the store and forced her into a car, where the co-defendant, Billy Joe Smith, shoved her head to the floorboard and held it there.
>
> The victim testified that the Defendant drove the car to a cemetery. At the cemetery, the Defendant and Smith began drinking Mad Dog 20/20, which they also forced the victim to drink at one point during the night. Smith ordered the victim to remove her clothes. At that time, the Defendant stated, "Just kill her.... [G]et it over with. I'm sick of hearing her cry." Smith then

2

raped the victim at knifepoint on the ground outside while the Defendant watched from the car. The victim testified that immediately after the rape, the Defendant stated, "Give her up to me, it's my turn. Let me have her.... Damn it, Billy Joe, you said if I drove and did like you said that I could have her when you was done with her to do whatever I wanted to." The Defendant, armed with a knife, next raped the victim in the front seat of the car. He then attempted to force her to perform fellatio. The victim testified that when she refused, the Defendant said, "I'd love to kill you.... I can't wait to see your blood flow.... I'm a son of satan and it wouldn't bother me a bit. I ought to kill you.... I've put five women up there in that grave and it wouldn't bother me to make you number six.... I blew one bitch's brains out for screaming." After the rape, the victim was sobbing, and the victim testified that the Defendant threatened to "chop [her] up and fry [her] on the hood of the car" if she did not quiet down.

Shortly thereafter, the two men forced her to hold a cigarette lighter so that they could see to divide up the money that they had taken from the Stop-In Market. Smith then raped the victim a second time on the ground outside, while the Defendant again watched from the car. Throughout the night and early morning, the two men threatened numerous times to kill the victim, and each one told the victim that he had a gun. The victim also testified that she felt what she believed to be a gun under the back seat of the car while she was being held down on the floorboard.

After the third rape, the three got back into the car, at which point the Defendant asked Smith if he could have a second turn at raping the victim. Smith refused. The victim testified that the three of them then sat in the car in silence for an hour or two so that Smith could "think." Finally, as the sun began to rise, Smith started the car and drove to the Roadway Inn in Johnson City, claiming that he and the Defendant would abduct the victim and have her help them rob banks. According to testimony of the victim, Smith said, "We're going to be Clyde and you'll be Bonnie."

When they arrived at the motel, Smith held a knife to the victim's back while the Defendant, leaning against the open door of the car, called to a motel employee in the parking lot to ask whether there were any vacant rooms. The employee refused them a room, citing their drunkenness, and while the Defendant was arguing with the employee, the victim slid out of the car and ran to the motel office. The employee later testified that he could identify the Defendant and Smith as the men he had seen that morning at the motel.

3

The victim testified that while she was running to the motel office, she heard the men running and she heard one of them say, "Let's get the f__k out of here." The motel employee stated that the men were driving too fast for him to get a license tag number.

Upon reaching the motel office, the victim called 911 and summoned the police. The whole ordeal had lasted approximately seven hours. When the police arrived, she went with them to the Johnson City Police Department to give a statement detailing the events of the night. While at the police department, she identified not only the Defendant from a photo line-up, but also was shown and identified the car driven by the perpetrators on the night of the crime. At the Johnson City Hospital, she submitted to medical testing, which was later introduced at trial in the form of a rape kit.

*Sneed v. State, 2011 WL 862029*, at *1-2.

On these facts, a Unicoi County Criminal Court jury convicted Sneed of all charges alleged in the indictments.

## III.    DISCUSSION

Sneed's § 2254 petition for habeas corpus raises the following grounds for relief: multiple instances of ineffective assistance of counsel; a violation of his right to confrontation; insufficient evidence; unconstitutionally selected and impaneled grand and petit juries; an impermissible jury instruction; and an improper amendment to the indictment (Doc. 1).  The Warden argues, in his answer, that Petitioner is not entitled to relief with regard to the state court decisions rejecting five of his grounds on the merits, given the deferential standards of review set forth in 28 U.S.C. § 2254. With respect to three remaining claims, the Warden maintains that they are barred from habeas corpus review due to Sneed's state procedural defaults.

The Court agrees with respondent Warden concerning Petitioner's entitlement to habeas corpus relief and, for the reasons which follow, will **DENY t**he petition and **DISMISS** this case.

These claims have been organized into two categories for purposes of discussion.  The first category encompasses the procedurally defaulted claims.  The second category contains

those claims which were adjudicated in the Tennessee courts.

## A. Procedural Default

A state prisoner who petitions for habeas corpus relief must first exhaust his available state court remedies by presenting the same claim sought to be redressed in a federal habeas court to the state courts. 28 U.S.C. § 2254(b)(1). The exhaustion rule requires total exhaustion of state remedies, *Rose v. Lundy*, 455 U.S. 509 (1982) (emphasis added), meaning that a petitioner must have fairly presented each claim for disposition to all levels of appropriate state courts. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845-47 (1999).

A prisoner who has failed to present a federal claim to the state courts and who is now barred by a state procedural rule from returning with his claim to those courts has committed a procedural default. *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). Federal review of a procedurally defaulted claim is foreclosed, unless the habeas petitioner can show cause to excuse his failure to comply with the state procedural rule and actual prejudice resulting from the alleged constitutional violation. *Id.* Cause can be shown where interference by state officials has rendered compliance with the rule impracticable, where counsel rendered ineffective assistance in violation of the prisoner's right under the Sixth Amendment, or where the legal or factual basis of a claim is not reasonably available at the time of the procedural default. *Murray v. Carrier*, 477 U.S. 478, 488, 492 (1986). A petitioner demonstrates prejudice by establishing that the constitutional error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original).

## 1. Grand and Petit Jury Selection Claim (Ground Five)

5

### 2. Ineffective Assistance (Ground Six)

Sneed alleges, with respect to the jury-selection claim asserted as Ground Five in the petition, that the trial judge failed to follow an appropriate and mandatory procedure in selecting the petit jury, in that he drew, with one hand, slips of paper containing the names of potential jurors held in his other hand, when he should have drawn the names from a jury box. Another alleged trial court error is that the trial judge also allowed an individual to remain and serve on the petit jury, though Sneed had been charged with aggravated burglary and theft of the juror's father's home. The grand jury, so claims Petitioner, contained jurors who were related to the victims of Sneed's previous crimes or to the victim in the crimes being challenged in this habeas corpus petition.

Petitioner complains in Ground Six that counsel failed to address the issue of the existence of two different transcripts of his preliminary hearing. According to petitioner, the transcripts are inconsistent with respect to the victim's description of the number of perpetrators and with respect to the name, description and age of the victim.

Respondent asserts that neither of the above claims was offered to the state courts on direct review or in the post-conviction proceedings and that return to those courts with the claims is precluded by the Tennessee's post-conviction statute of limitations, as well as the statutory restrictions for filing successive state petitions.

Petitioner alleges, as cause, that his collateral review counsel was ineffective for failing to present, during the post-conviction appeal, any issue which the Court finds to have been procedurally defaulted (Doc. 1 p. 50). Petitioner's allegations do not supply cause. First of all, the jury-selection claim is one which is properly raised on direct appeal and not in a post-conviction proceeding. *See Williams v. State*, No. M2007-02070-CCA-R3-PC, 2008 WL

5272556, *7 (Tenn. Crim. App. Oct. 7, 2008), *perm. to app. denied* (Tenn. 2009) ("The petitioner had an opportunity to object to the racial makeup of the jury at trial and on direct appeal; however, he failed to make such objections. We hold that the petitioner has waived this issue and affirm the post-conviction court's order denying relief on this ground."). Thus, any attorney shortcoming in failing to raise the issue would have to be attributed to the lawyer who represented Petitioner in his direct appeal, not the one who represented him on collateral review.

Secondly, as Petitioner rightly recognizes, there is no right to counsel in a post-conviction proceeding and, thus, no right to the effective assistance of counsel. *Coleman*, 501 U.S. at 752; *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). And, generally, the ineffective assistance of counsel does not excuse a state procedural default. *Coleman*, 501 U.S. at 755. There is one limited equitable exception, as announced in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). *Martinez* holds that where state law requires ineffective-assistance claims to be raised during initial collateral review, post-conviction counsel's ineffective assistance excuses a procedural default of a substantial claim that trial counsel gave ineffective assistance.[2] *Martinez*, 132 S. Ct. at 1320. However, by its very terms, the exception does not apply to a post-conviction appellate procedure—only to those errors in the "*initial-review* collateral proceeding." *Wallace v. Sexton*, No. 13–5331, 570 F. App'x 443, 453 (6th Cir. 2014). Thus, any attorney shortcoming in the post-conviction appeal does not qualify as a *Martinez* exception to the required showing of cause.

Since Petitioner has failed to show cause to excuse the procedural default of these claims, federal review is foreclosed.

---

[2] The *Martinez* exception applies in Tennessee. *Sutton v. Carpenter*, 745 F.3d 787, 795-96 (6th Cir. 2014).

7

### 3. Flight Instruction (Ground Seven)

In this ground, Sneed alleges that the trial court improperly instructed the jury on flight because there was no evidence of flight introduced and because his defense was one of mistaken identity. Respondent claims procedural default of the type involving a failure to present a claim as a violation of a federal constitutional right, but only as a state law violation.

To avoid a procedural default, a claim must be offered to a state court on a federal constitutional basis—not merely as one arising under state law. *Stanford v. Parker*, 266 F.3d 442, 451 (6th Cir. 2001) (citing *Riggins v. McMackin*, 935 F.2d 790, 792-93 (6th Cir. 1991)).

Sneed pressed his flight instruction claim on the state courts as a violation of state law and not as a violation of his constitutional rights (Addendum 1, Doc. 1, Petr.'s Br. 21-22).[3] This constitutes a procedural default. Petitioner again alleges ineffective assistance of counsel during the post-conviction appeal as cause. For reasons set forth in the previous discussion, this claim of cause likewise falters and federal review of this claim is now barred by Sneed's procedural default.

### B. Adjudicated Claims

Under the review standards set forth in the Antiterrorism and Effective Death Penalty Act (AEDPA), codified in 28 U.S.C. § 2241, *et seq*., a court considering a habeas claim must defer to any decision by a state court concerning the claim unless the state court's judgment (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d)(1)-(2).

---

[3] The Court refers to the page numbers of state court documents by the numbers used in docketing submissions in ECF, the electronic case filing system employed in this district.

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or resolves a case differently on a set of facts which cannot be distinguished materially from those upon which the precedent was decided. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" prong of § 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in Supreme Court cases which governs the issue but unreasonably applies the principle to the particular facts of the case. *Id.* at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *See id.* at 411; *see also Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) ("[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.").

This is a high standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be'") (quoting *Harrington*, 131 S.Ct. at 786). Further, findings of fact which are sustained by the record are entitled to a presumption of correctness—a presumption which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

1. **Ineffective Assistance of Counsel (Ground One).**

In his first claim in the adjudicated-claims grouping, petitioner maintains that his trial attorney gave him ineffective assistance by failing to introduce FBI laboratory reports and to call Keith Howland, an FBI special agent, to testify, even though counsel had subpoenaed the agent and he was waiting in the hall outside the courtroom to be called. Sneed alleges that the report would have shown a complete lack of evidence connecting him to the crime and that the

9

agent, likewise, could have testified that no physical or forensic evidence linked Petitioner to the crime.

### a) The Law

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. IV. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a break down in the adversary process that renders the result unreliable.

*Id.*

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v.*

*Morrison*, 477 U.S. 365, 381 (1986).  It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance.  *Strickland*, 466 U.S. at 689.

Second, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  *Moss v. United States,* 323 F.3d 445, 454 (6th Cir. 2003) (quoting *Strickland*, 466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome. " *Id*. at 454-455 (quoting *Strickland,* 466 U.S. at 694).  A petitioner must demonstratethat , due to counsel's deficient performance, there was a "breakdown in the adversary process that rendered the result of the proceeding unreliable."  *Id*. (quoting *Bell v. Cone*, 535 U.S. 685 (2002)).  Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

### b) Analysis

When this claim of ineffective assistance was carried to the TCCA, the state appellate court reviewed evidence and testimony offered at the evidentiary hearing and observed that the post-conviction court had made specific findings.  It noted that trial counsel had testified that no serological evidence tied Sneed to the crimes and that he did not call the FBI expert to the stand because he believed that other damaging evidence would have come in through his testimony. The TCCA also pointed out that, among the post-conviction court's specific findings, were the findings that the report indicated that samples taken from Petitioner were "unusable for DNA analysis," that offering that evidence would have left "the jury in a position to speculate," and that counsel had made a tactical decision not to call the expert.

In considering the petitioner's claims, the TCCA cited to *Strickland*—the seminal case for determining whether counsel has rendered constitutionally ineffective assistance, as well as to *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)—a case which holds that a petitioner who claims ineffective assistance must show that counsel's advice or services fell below the range of competence demanded of attorneys in criminal cases. *Baxter*'s analysis is the equivalent of the performance-prong of the *Strickland* test. Thus, the state court's decision was not "contrary to" clearly established federal law as determined by the Supreme Court.

Thus, the question is whether it was an unreasonable application of *Strickland* for the state court to decide that relief was unwarranted. The TCCA concluded that the FBI laboratory report contained no information linking Sneed to the crime and that, at any rate, the lack of any physical evidence connecting Petitioner to the crimes was presented at trial through other witnesses. The TCCA observed that Sneed had failed to call the expert to testify at the evidentiary hearing, noting that such an omission, generally, dooms an ineffective assistance claim based on counsel's failure to present a witness at trial. The state appellate court found ultimately that Petitioner had failed to establish that he had received ineffective assistance from trial counsel.

The factual determinations made by the post-conviction court and implicitly adopted by the TCCA based on its review of the record, are entitled to deference and, absent any clear and convincing evidence to the contrary, will be presumed correct. *Brumley v. Winard*, 269 F.3d 629, 637 (6th Cir. 2001) (citing *Sumner v. Matta*, 449 U.S. 539, 546-47 (1981)). Petitioner has offered no such evidence.[4]

---

[4] Sneed makes an across-the-board challenge to the state court's factual findings (Doc. 1, Pet. 51-53, but does not specify which of the state court's factual findings he is attacking.

A reviewing court must presume that counsel's challenged conduct could be considered sound trial strategy, *Strickland,* 466 U.S. at 689, and must bear in mind that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690; *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001) ("A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness.").

Sneed has not shown that counsel's strategic choice not to call the expert to testify was not reasonable. *See Nichols v. Heidle*, 725 F.3d 516, 543 (6th Cir. 2013); *Webb v. Mitchell*, 586 F.3d 383, 395 (6th Cir. 2009) (observing the petitioner had failed to "overcome 'the strong presumption' that his trial counsel conducted a reasonable investigation") (citing *Campbell v. Coyle*, 260 F.3d 531, 553 (6th Cir. 2002); *see also Wood v. Allen*, 558 U.S. 290, 130 S.Ct. 841, 849 (2010) (finding that "the state court's conclusion that [the petitioner]'s counsel made a strategic decision not to pursue or present evidence . . . was not an unreasonable determination of the facts," in light of the proof presented in in the state court proceeding).

As to counsel's purported failure to introduce the FBI lab report into evidence to show that the results did not connect Petitioner to the crimes, the state courts did not unreasonably apply *Strickland* in holding that this alleged shortcoming did not establish ineffective assistance. As the TCCA stated, the the lack of a connection was established through other evidence. *See Parker v. Allen*, 565 F.3d 1258, 1279 (11th Cir. 2009) (finding that "[a]dditional, but cumulative, evidence which could have been presented does not, however, establish ineffective assistance").

"When § 2254(d) applies, the question is not whether counsel's actions were reasonable," but instead "whether there is any reasonable argument that counsel satisfied *Strickland*"'s deferential standard." *Harrington*, 562 U.S. 86, 105 (2011). Given the state court's factual

findings, the proof in the record, and the double deference owed to a state court's adjudication of a claim of ineffective assistance, the state court decision did not result from either an unreasonable factual determination in light of the evidence before it or an unreasonable application of the controlling legal principles in *Strickland*. Therefore, Sneed is due no relief on this claim.

### 2. Right to Confront (Ground Two).

In this claim, Petitioner maintains that a statement given by his co-defendant, which was introduced at trial through the testimony of Ron Arnold, a Unicoi County Sheriff's Department criminal investigator, violated his confrontation right, as guaranteed to him by the Sixth Amendment. Sneed further maintains that, had the prosecution desired to introduce the statement, the proper method of introduction was to call his co-defendant to testify as to the statement.

The challenged testimony was offered during trial counsel's cross-examination:

Q. NOW I BELIEVE YOU STATED A MOMENT AGO SOMEBODY TOLD YOU TO BE ON THE LOOKOUT FOR TERRY DEAN SNEED, OR THAT TERRY DEAN SNEED MIGHT BE INVOLVED. IS THAT CORRECT, SIR?

A. THAT'S CORRECT

...

Q. WHAT SOMBODY TOLD YOU?

A. THE CO-DEFENDANT.

*Sneed*, 1998 WL 783330, at *8.

Immediately following this exchange, trial counsel made an oral motion for a mistrial, citing to *Bruton v. United States*, 391 U.S. 123 (1968). The motion was denied, but the trial

court gave a curative instruction.

### a) The Law

*Bruton* held that admission of a non-testifying co-defendant's statement against a defendant at a joint trial is prejudicial error. However, where such a statement is elicited by a defendant's own attorney, it is not deemed to be a *Bruton* error because defense counsel, acting as a defendant's agent, is viewed as opening the door to the questioning. *See e.g., United States v. Arriola-Perez*, No. 03–8048, 137 F. App'x. 119, 132-33 (10th Cir. 2005); *United States v. Ryes-Alvarado*, 963 F.2d 1184, 1187 (9th Cir. 1992); *United States v. Ramos*, 861 F.2d 461, 468-69 (6th Cir. 1988) (noting that a party who opens up a subject may not complain if the opposing party adduces proof on the same subject) (citing cases).

### b) Analysis

The *Bruton* issue was raised on direct appeal but the state court declined to discuss whether a *Bruton* violation had occurred. Instead the TCCA stated, in effect, that any error was elicited by trial counsel, who thus could not complain of the error. The state appellate court went on to absolve counsel of any attempt to compel a mistrial. The TCCA characterized the witness's statement of what the co-defendant told him as being general and vague. Noting that a jury is presumed to follow its instructions and that whether to grant a mistrial was within the lower court's discretion, the TCCA went on to find that, in view of the lower court's prompt curative instruction, combined with the innocuous nature of the offending testimony, the trial court did not abuse its discretion in denying a mistrial.

Since there was no *Bruton* error to begin with, there is no constitutional infirmity. Thus, the trial court's ruling on the mistrial was a matter of state law. *Hruby v. Wilson*, No. 09–3551., 494 F. App'x 514, 517 (6th Cir. 2012). Where state courts have spoken on a state law

issue, it is not the role of a federal habeas court "to reexamine state-court determinations of state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A decision, which rests entirely state law, generally is not of federal concern. *See e.g., Swarthout v. Cooke*, 562 U.S. 216, 222 (2011) (finding that, unless a federal right is at stake, a federal court's finding of error ruling is irrelevant); *Rivera v. Illinois*, 556 U.S. 148, 161-62 (2009) (observing that, where states have decided issues as a matter of state law, "federal judges or tribunals lacked statutory authority to adjudicate the controversy").

So it is here. The writ will not issue with respect to this claim because, as it has been pled by Sneed, it presents no cognizable federal issue.

### 3. Sufficiency of Evidence (Grounds Three and Four).

Sneed alleges that evidence was insufficient to convict him of: 1) two counts of aiding and abetting aggravated rape and 2) one count of aggravated rape, one count of aggravated robbery, and one count of aggravated kidnapping. With respect to the aiding-and-abetting-aggravated-rape conviction, Sneed argues that the evidence shows that he was present and "watching," but does not show that he took any action to aid or assist or that he manifested a desire or intent to carry out his co-defendant's commission of two aggravated rape offenses on the victim.

As to the other convictions, Petitioner argues that there was no physical evidence, including fingerprints, hair, or DNA evidence, tying him to the crimes and that the victim's identification of him as the perpetrator was unreliable because the rapes were committed in nighttime darkness, because of her state of excitement during the commission of the criminal sexual assaults, and because she did not notice tattoos on his hands.

### a) The Law

16

The controlling rule for resolving a claim of insufficient evidence resides in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Gall v. Parker*, 231 F.3d 265, 287-88 (6th Cir. 2000) (*Jackson* is the governing precedent for claims of insufficient evidence.). In *Jackson*, the Supreme Court held that evidence, when viewed in the light most favorable to the prosecution, is sufficient if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 319. Resolving conflicts in testimony, weighing the evidence, and drawing reasonable inferences from the facts are all matters which lie within the province of the trier of fact. *Id.* at 319; *Cavazos v. Smith*, 132 S.Ct. 2, 6, 181 L.Ed.2d 311 (2011) (Under *Jackson*, a habeas court presumes that the fact finder has resolved facts which support conflicting inferences in favor of the State and it must defer to that resolution.)

A habeas court reviewing an insufficient-evidence claim must apply two levels of deference. *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). Under Jackson, deference is owed to the fact finder's verdict, "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (quoting *Jackson*, 443 U.S. at 324 n.16). Under AEDPA, deference is also owed to the state court's consideration of the trier-of-fact's verdict. *Cavazos*, 132 S.Ct. at 6 (noting the double deference owed "to state court decisions required by § 2254(d)" and "to the state court's already deferential review"). Hence, a petitioner "bears a heavy burden" when insufficiency of the evidence is claimed. *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

 **b) Analysis**

*i. Aiding and Abetting Aggravated Rape*

On direct appeal, the TCCA addressed the first part of Sneed's federal claim challenging

the sufficiency of evidence to support his conviction for aiding and abetting aggravated rape.

The Defendant first argues that the evidence is insufficient to support a jury verdict that he was guilty of aiding and abetting aggravated rape beyond a reasonable doubt. Under Tennessee law, "[a] person is criminally responsible for ... the conduct of another if ... [a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids or attempts to aid another person to commit the offense...." Tenn. Code Ann. § 39-11-402. The Defendant argues that he was not an active participant in the rapes of the victim by Smith. He argues that he was merely present while Smith raped the victim and in no way offered any assistance or aid to Smith during the rapes. He further argues that he did not take any action that would manifest a desire or intent to carry out the rapes.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[findings] of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact beyond a reasonable doubt." Tenn. R.App. P. 13(e). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this Court. Nor may this court re-weigh or re-evaluate the evidence in the record below.

A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. On appeal, the State is entitled to the strongest legitimate view of the evidence and all inferences therefrom. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact.

In the case at bar, the evidence presented by the State clearly contradicts the Defendant's assertion that he was not an active participant in the rapes perpetrated by Smith. The Defendant's statement, "[Y]ou said if I drove and did like you said that I could have her when you was done with her to do whatever I wanted to," shows that the perpetrators shared at least some pre-formed intent to act in concert in the commission of the rapes. Moreover, the Defendant actually drove the car to the cemetery where all three rapes occurred, and the Defendant remained armed with his knife during much of the evening and early morning. In fact, the

> Defendant himself urged Smith to kill the victim on at least one occasion. Therefore, viewing the evidence in light most favorable to the prosecution, there is clearly sufficient evidence for the jury to have found the Defendant guilty of aiding and abetting aggravated rape beyond a reasonable doubt.

*Sneed*, 1998 WL 783330, at *3 (all case citations and most internal quotation marks omitted).

As can be seen from above excerpt of the TCCA's opinion, it conducted its review under Rule 13(e) of the Tennessee Rules of Appellate Procedure, which incorporates the sufficiency of evidence standard enunciated in *Jackson*. *Bates v. Carlton*, No. 2:09–CV–120, 2012 WL 3524901, at *6 (E.D.Tenn. Aug. 14, 2012). Therefore, the TCCA's adjudication of the claim was not contrary to the well-established legal rule in Supreme Court cases.

The TCCA began its discussion of Petitioner's claim by defining an aiding and abetting offense under Tennessee Code Annotated § 39-11-402, which in relevant part requires "an intent to promote or assist the commission of the offense" and solicitation, directing, aiding, or attempting to aid another to commit the offense. The TCCA then cited to a comment of Sneed's, which indicated that he had a pre-formed intent to act in concert with Smith in the perpetration of the rapes, as well as to Sneed's driving the car to the situs of the rapes, his being armed with a knife during the perpetration of all the rapes, and to his urging Smith to kill the victim. All this proof in the record, viewed in tandem with the statutory elements of the offense persuaded the TCCA that the evidence was sufficient with respect to the challenged conviction.

From the evidence outlined above, this Court concludes that the TCCA reasonably determined that the proof in Petitioner's case was constitutionally sufficient to sustain his convictions for aggravated rape, aggravated robbery, and aggravated kidnapping and now declines to issue the writ because he has failed to demonstrate that the state court's application

of *Jackson* to the facts of his case was unreasonable or that its decision was based on an unreasonable factual determination.

### *i. Aggravated Rape, Aggravated Robbery, Aggravated Kidnapping*

On direct appeal, the TCCA resolved Petitioner's second insufficient-evidence claim, as follows:

> [T]he Defendant argues that the evidence was insufficient to support jury verdicts that he was guilty of aggravated rape, aggravated robbery, and aggravated kidnapping beyond a reasonable doubt. The basis of his argument is mistaken identity. He argues that no physical evidence links him to the scene of the crime. He also contends that the victim's identification of the Defendant is suspect since the majority of the abduction took place at night in darkness, the victim was in an excited state at the time of the crime, and she failed to notice tattoos on the Defendant's body.
>
> As previously noted, because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts in the record and the inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the accused guilty beyond a reasonable doubt. Tenn. R.App. P. 13(e).
>
> Despite the lack of physical evidence linking the Defendant to the crime, the victim positively identified the Defendant as her assailant. She spent approximately seven hours with her two assailants, and a few of those hours were spent in broad daylight. Additionally, she testified that she heard Smith call the Defendant by both his first name and his nickname. The victim's testimony alone would be sufficient to convict the Defendant. However, in this case, the victim's testimony was coupled with images captured by a video surveillance camera and an identification made by the motel employee. This issue is without merit.

*Sneed*, 1998 WL 783330, at *4.

The above proof in the record shows that the victim made a positive identification of Sneed, after having spent some seven hours with him during the criminal episode out of which

arose the challenged convictions, that some of those hours were daytime hours, and that she testified that she heard Sneed being called by both his first name and his nickname. As the TCCA found, the victim's identification alone would suffice to sustain Sneed's convictions, but the evidence includes more—images of Petitioner on a videotape from the surveillance camera at the convenience store which was the site of the robbery and the victim's abduction. It also includes the motel employee's identification of Sneed.

Whether to credit testimony offered by witnesses, how to resolve inconsistencies between the testimony of witnesses, what inferences, if any, to draw from the testimony—all are issues to be determined by the fact finder, in this case Sneed's jury, and not by this federal habeas court. *Jackson*, 443 U.S. at 319. In essence, that is what Petitioner is asking the Court to do—to review the factfinder's credibility determinations as to the victim's testimony identifying Sneed as the perpetrator.

Be that as it may, from the evidence outlined above, this Court concludes the state court reasonably determined that the proof in Petitioner's case was constitutionally sufficient and now declines to issue the writ because he has failed to demonstrate the state court's application of *Jackson* to the facts of his case was unreasonable or that its decision was based on an unreasonable factual determination. Habeas corpus relief does not lie with respect to this claim.

### 4. Amended Indictment (Ground Eight).

In his last claim, Sneed maintains that, on the morning of trial, the trial court allowed the prosecution to amend Count Two of the indictment, in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments. More specifically, Petitioner complains that the state was permitted to add the words: "so as to substantially interfere with the victim's liberty"

and to correct the statutory citation referred to in the indictment.[5]  It is Petitioner's position that the indictment made no allegations concerning interference with the victim's liberty so that  the questioned additions to the indictment added a new element and, thus, charged a new course of conduct, without sufficient notice to him or review by the grand jury. Sneed asserts that he was prejudiced by the amendment because it increased the seriousness of his felony charge from a Class C to a Class B and because it called for greater punishment than that called for in the unamended indictment.   Petitioner does not allege, however, that the amendments to the indictment prevented him from preparing a defense to the charge.

When this claim was carried to the TCCA on direct appeal, it stated that, under Tennessee criminal procedural rules, a court has discretion to allow an amendment to an indictment before jeopardy attaches, without a defendant's consent, so long as the amendment does not add an offense or substantially prejudice a defendant's rights.  *Sneed*, 1998 WL 783330, at *5.   The TCCA then reasoned that the improper citation to Tennessee Code. Annotated § 39-13-301 in the indictment set forth the definition of kidnapping and false imprisonment, so that it should have been clear to Petitioner, from the improperly cited statutory provision, as well as from the language in Count Two itself, that the charge referred to aggravating kidnapping.  *Sneed*, 1998 WL 783330, at *6.  The TCCA, though agreeing with Petitioner that the inclusion of the words "so as to substantially interfere with the liberty of the victim" added a new element to the crime of aggravated kidnapping, found that the additional words did not result in a reversible error.  *Id*.  Ultimately, the TCCA concluded that Petitioner

---

[5] As relevant to Sneed, Count Two of the amended indictment reads:  TERRY DEAN SNEED, on or about the 29th day of November, 1992, in the County and State aforesaid, and before the finding of this Indictment, did unlawfully remove the victim from her place of employment*, so as to substantially interfere with the victim's liberty*, while the said . . . TERRY DEAN SNEED w[as] armed with a deadly weapon, to-wit: a Knife, in violation of Section 39-13-30*4* of the Tennessee Code Annotated, all of which is against the peace and dignity of the State of Tennessee. *Sneed*, 1998 WL 783330, at *5 (italics added).  The italicized parts of the indictment were the ones which were added on the day of trial.

had not "experienced actual surprise as a result of the amendments" and it did not grant relief. *Ibid*.

### a) The Law

The amendment of an indictment in state court, generally, does not present a cognizable claim. However, while a state defendant has no constitutional right to be charged in an indictment, *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984), no matter what method a state selects to charge a criminal offense, a defendant has a right to receive "notice of the specific charge." *Cole v. Arkansas*, 333 U.S. 196, 201 (1948) (holding that "notice of the specific charge . . . [is] among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal").

Moreover, the notice must be adequate so as to enable the criminal accused to formulate a defense to the charge. *See Koontz*, 731 F.2d at 369. Describing the offense "with some precision and certainty ... as will enable a presumptively innocent man to prepare for trial" will satisfy the constitutional requirement of fair notice. *Id*. A belated modification in an indictment could prejudice the defense and, if the prejudice is excessive, could also violate due process. *Id*. at 369-70. However, "an indictment which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable on habeas corpus." *Mira v. Marshall*, 806 F.2d 636 (6th Cir.1986).

### b) Analysis

The indictment, even with the incorrect statutory citation, contained sufficient factual allegations to apprize Petitioner of the aggravated kidnapping charge against which he had to defend. In *Mira*, the Sixth Circuit held that a criminal accused was furnished with sufficient information to give him adequate notice and the opportunity to defend against any double

jeopardy violations which might arise in the future, despite the fact that he claimed that all of the elements of the offense were not included in the indictment. *Id*. at 639. And it has been held that a defendant enjoys adequate notice, even though an indictment cites the wrong statute, since the factual statements contained in the indictment control the required notice, not the statutory citations. *United States v. Fekri*, 650 F.2d 1044 (9th Cir.1981).

A charging instrument will pass constitutional muster if it delineates the offense with sufficient precision so as to inform the accused of the crime charged. *Koontz*, 731 F.2d at 369. The state-court decision (i.e., that the amended indictment did not prejudice Petitioner and (implicitly) afforded him "fair notice") must stand unless it is contrary to or an unreasonable application of the relevant Supreme Court precedent requiring "notice of the specific charge" or is based on unreasonable factual determinations.[6] Because the state court decision was none of these things, Petitioner is not entitled to habeas corpus relief.

## IV.    CONCLUSION

For the above reasons, this *pro se* state prisoner's application for a writ of habeas corpus will be **DENIED** and this case will be **DISMISSED**.

## V.    CERTIFICATE OF APPEALABILITY

Finally, the Court must consider whether to issue a certificate of appealability (COA) should Petitioner file a notice of appeal. A petitioner may appeal a final order in a § 2254 case only if he is issued a COA, and a COA will be issued only where the applicant has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c). A petitioner whose claims have been rejected on a procedural basis must demonstrate that reasonable jurists

---

[6] Though the TCCA did not cite to any Supreme Court decisions in adjudicating this claim, a state court decision is still entitled to deferential review under § 2254(d), even in the absence of a citation to a well-established principle in a Supreme Court case. *See Early v. Packer*, 537 U.S. 3, 8 (2002).

would debate the correctness of the Court's procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001). Where claims have been dismissed on their merits, a petitioner must show reasonable jurists would find the assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484.

After having reviewed each claim individually and in view of the firm procedural basis upon which is based the dismissal of certain claims and the law upon which is based the dismissal on the merits of the rest of the claims, reasonable jurors would neither debate the correctness of the Court's procedural rulings nor its assessment of the claims. *Id.* Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

**A separate judgment will enter**.


**ENTER:**


_____
s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE